No. 19,336.

E. KATHRYN FOUQUET, ET AL. *v.* STATE COMPENSATION
INSURANCE FUND.
(355 P. [2d] 943)

Decided October 10, 1960.

Mr. RICHARD E. CONOUR, Mrs. ELIZABETH A. CONOUR, for plaintiff in error Fouquet.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission of Colorado.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, Mr. FRED BODEN DUDLEY, for defendant in error State Compensation Insurance Fund.

*In Department.*

PER CURIAM.

ON December 23, 1956, Charles Robert Fouquet met his death in a plane crash at Del Norte, Colorado. His widow filed claim for compensation with the Industrial Commission. Decedent at the time of his death was employed as a Liquor Enforcement Officer under the Secretary of State in a specially designated area, the San Luis Valley and the San Juan Basin.

The circumstances of his death appear from the record as follows: One Gordon Wheeler, then residing in Grand Junction, owned the City Cafe and Bar in Monte Vista, and the business was for sale, any sale being contingent upon the purchaser securing a liquor license for the premises. Wheeler had negotiated a sale to Vagas Brothers, but their application to the Monte Vista City Council for a liquor license was denied on December 26th on the recommendation of the licensing authority, the Vagas' being unacceptable for various reasons.

On December 23rd prior to the action of the council but when its action could with reasonable certainty be anticipated, two Alamosa men, Hoof and Gray, proposed to purchase the business on Wheeler's terms, and arranged to go to Grand Junction in their own plane to interview Wheeler. They asked Fouquet to accompany them, anticipating a possible obstacle due to Wheeler's then pending sale to Vagas and desiring to assure Wheeler that Vagas was not acceptable and would not receive a Monte Vista license. Fouquet agreed to ac-

company them, and took with him the Department file, previously obtained from Denver, and exhibited it to Wheeler. He informed Wheeler that a license to the Vagases was unobtainable and thereafter took no part in the negotiations. Wheeler, Hoof and Gray agreed upon a sale and a down payment was made. Thereupon Hoof, Gray and Fouquet reentered the plane and returned to Del Norte where the fatal crash occurred. All occupants of the plane were killed.

Following a hearing before a referee of the Commission the claim was denied on the ground that at the time of his death decedent was not acting within the scope of his employment and that the accident did not arise out of and in the course of his employment. On review of this award the Commission found to the contrary, holding that decedent was acting within the course of his employment and awarded compensation.

The insurer, State Compensation Fund, sought review in the district court contending that the Commission acted without and in excess of its powers in that its order was not supported by the evidence and was in fact contrary to the evidence. Issue was joined and following hearing the trial court vacated the Commission's award and ordered an award to be entered denying the claim.

█ Claimant and the Commission are here by writ of error. Fouquet was employed by the Secretary of State in the Liquor License Division. The Secretary of State is authorized under C.R.S. '53, 75-1-3, to promulgate "specifications of duties of officers and employees under him." He has promulgated no such specifications and decedent's authority as a liquor enforcement officer was somewhat uncertain, but it is essentially true that his authority did not exceed that of his principal. It was no part of the legal authority of the Division or of decedent, to promote, facilitate or assist in the purchase and sale of any business and premises, whatever its nature.

The controlling question is:

Was decedent acting within the general scope of his authority in going to and returning from Grand Junction for the purpose stated? The record compels the conclusion that he was not.

The trial court observed:

"Nowhere in the record can the court find that the deceased was performing any service to his employer. He volunteered after a request from a stranger to his employment to go to Grand Junction to help the prospective purchasers of a liquor license close a deal. He thus became a volunteer."

This finding is fully warranted by the record, any other conclusion would lead to awarding compensation for activities which the employee had no authority to perform and which his duties did not require, a result not contemplated by the Workmen's Compensation Act however liberally construed.

■ It may be conceded that the answering of questions and supplying information was generally within decedent's implied authority; such authority, however, cannot be extended to embrace a trip to a distant city to assist in the promotion of a private transaction in which neither he nor his employer had an official interest.

Had the Grand Junction trip been necessary in the performance of a duty connected with his employment, compensation would be allowable, but the errand here was unnecessary and unauthorized.

■ Grand Junction is far removed from the San Luis Valley and the San Juan Basin. The assignment to Fouquet of a specified territory carried a clear implication that he was to perform his duties there and not elsewhere. No presumption arises that he had authority beyond the boundaries of his allotted district or territory and when he departed therefrom he stepped beyond the boundary of employee-employer relationship, and engaged in a personal activity for which his employer could assume no responsibility.

In *Aetna Company v. Industrial Commission,* 127 Colo. 225, 255 P. (2d) 961, a paint salesman was injured while hunting pheasants with employees of a customer whom he had called upon in connection with his employment that morning, the Court said:

"We see no obligation on the part of claimant to be at the place where he was injured or engaged in the thing he was doing at the time."

Decedent's trip to Grand Junction did not arise out of his employment. That the sale of the Wheeler property to Hoof and Gray involved a liquor license in Fouquet's territory, is too tenuous a speculation upon which to establish a causal connection between the employment and the injury.

The judgment is affirmed.

MR. JUSTICE KNAUSS, MR. JUSTICE HALL and MR. JUSTICE DAY concur.